MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace, Esq. [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
*Attorneys for Plaintiffs*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X



OSCAR MOTA,

                        *Plaintiff,*

            -against-                                    

IMPERIAL PARKING SYSTEMS INC., (A/K/A          **COMPLAINT**
IMPERIAL PARKING SYSTEMS CORP.), 525-535
GARAGE CORP., 650 PARKING CORP., CENTRAL       **ECF Case**
GARAGE CORP., 785 GARAGE CORP., EAST 97TH
PARKING CORP., CENTRAL HARLEM GARAGE
CORP., 160 PARKING CORP., EAST RIVER
PARKING CORP., PRESTIGE GARAGE CORP.,
WEST 145TH GARAGE CORP., 444 MANHATTAN
PARKING CORP., 200 E. 70 GAR. CORP., 1010
PARKING CORP., 200 EAST PARKING CORP.,
WEST 54TH PARKING CORP., 345 EAST GARAGE
CORP., LEXINGTON GARAGE CORP., 100
PARKING CORP., 355 E. 72ND GARAGE CORP., 165
EAST PARKING CORP., 250 E. 63RD GARAGE
CORP., 182 E. 73RD GARAGE CORP., 118 PARKING
CORP., 220 EAST 63RD ST. GARAGE CORP.
WILLIAM LERNER, JACK LERNER, AND ROBERT
DELOUISE,

                        *Defendants.*
-----------------------------------------------------------------X

        Plaintiff Oscar Mota ("Plaintiff" or "Mr. Mota"), by and through his attorneys, Michael

Faillace & Associates, P.C., alleges upon information and belief, and as against defendants

Imperial Parking Systems Inc. (a/k/a Imperial Parking Systems Corp.), 525-535 Garage Corp.,

650 Parking Corp., Central Garage Corp., 785 Garage Corp., East 97th Parking Corp., Central

Harlem Garage Corp., 160 Parking Corp., East River Parking Corp., Prestige Garage Corp., West 145th Garage Corp., 444 Manhattan Parking Corp., 200 E. 70 Gar. Corp., 1010 Parking Corp., 200 East Parking Corp., West 54th Parking Corp., 345 East Garage Corp., Lexington Garage Corp., 100 Parking Corp., 355 E. 72nd Garage Corp., 165 East Parking Corp., 250 E. 63rd Garage Corp., 182 E. 73rd Garage Corp., 118 Parking Corp., 220 East 63rd St. Garage Corp. (collectively referred to as "Defendant Corporation"), William Lerner, Jack Lerner, and Robert Delouise (collectively referred to as the "Individual Defendants) (Defendants Corporations and the Individual Defendants are collectively referred to as the "Defendants"), as follows:

## NATURE OF ACTION

1.      This action arises out of the Plaintiff's employment with Defendants from on or about May 31, 2003 through August 3, 2007.

2.      Defendants Imperial Parking Systems, Inc. (a/k/a & a/d/b/a/ Imperial Parking Systems Corp.) ("Imperial"), and William Lerner, Jack Lerner, and Robert Delouise (the "Individual Defendants") own, manage, and/or operate a large number of parking lots throughout New York City.

3.      The various parking lots managed, owned and/or operated by Imperial and/or the Individual Defendants include approximately 99 different parking lot locations in Manhattan.

4.      The Plaintiff worked effectively as management's investigator of the operations of approximately a quarter of the parking lots (approximately 23), checking on the status of the lots operations (i.e. reporting problems with employees, investigating theft, reporting the condition of the lots, recording actual opening and closing times of the lots, and reporting any other problems to management).

- 2 -

5.    Plaintiff Oscar Mota was assigned to approximately 23 of the parking lot

locations, including those incorporated and located as follows:

    a.  525-535 Garage Corp., 525-535 E. 86th Street, New York, NY 10028;
    b.  650 Parking Corp., 650 Park Avenue, New York, NY 10021;
    c.  Central Garage Corp., 860 5th Ave., New York, NY 10021;
    d.  785 Garage Corp., 2 East 60th Street, New York, NY 10022;
    e.  East 97th Parking Corp., 175 East 96th Street, New York, NY 10128;
    f.  Central Harlem Garage Corp., 130 Malcolm X Blvd., New York, NY 10026;
    g.  160 Parking Corp., 160 East 65th Street, New York, NY 10021;
    h.  East River Parking Corp., 345 East 94th St., New York, NY 10128;
    i.  Prestige Garage Corp., 25 Sutton Place So., New York, NY 10022;
    j.  West 145th Garage Corp., 330 W. 145th St., New York, NY 10039;
    k.  444 Manhattan Parking Corp., 444 Manhattan Ave., NY, NY 10026;
    l.  200 E. 70 Gar. Corp., 201 E. 69th St., New York, NY 10021;
    m.  1010 Parking Corp., 530 E. 72nd Street, New York, NY 10028;
    n.  200 East Parking Corp., 1081 3rd Ave., New York, NY 10021;
    o.  West 54th Parking Corp., 141 W. 54th Street, New York, NY 10019;
    p.  345 East Garage Corp., 345 E. 80th Street, New York, NY 10021;
    q.  Lexington Garage Corp., 1501 Lexington Ave., New York, NY 10029;
    r.  100 Parking Corp., 1831 Madison Ave., New York, NY 10035;
    s.  355 E. 72nd Garage Corp., 355 East 72nd St., New York, NY 10021;
    t.  165 East Parking Corp., 165 E. 72nd / 184 E. 73rd St., New York, NY 10021;
    u.  250 E. 63rd Garage Corp., 250 East 63rd St., New York, NY 10021;
    v.  182 E. 73rd Garage Corp., 182 East 73rd Street, New York, NY 10021;
    w.  118 Parking Corp., 1682 Park Ave., New York, NY 10035; and
    x.  220 East 63rd St. Garage Corp., 220 E. 63rd Street, New York, NY 10021;

(collectively referred to as the "Individual Lots").

6.    Upon information and belief, Defendant William Lerner, and Defendant Jack

Lerner, the father of William Lerner, own and operate the Individual Lots directly, and through

Imperial Parking Systems, Inc. (a/k/a & a/d/b/a/ Imperial Parking Systems Corp.), and through

the various other Defendants.

7.    Upon information and belief, Robert Delouise works for the other Defendants,

and operates as a day-to-day manager of operations for the Defendants.

8.    Upon information and belief, at all times relevant to this complaint, Defendants

have maintained a policy and practice of requiring their parking lot workers to work in excess of

forty (40) hours per week without providing them the minimum wage and overtime compensation required by federal and state law and regulations.

9.    The Plaintiff now brings this action for unpaid overtime wage orders pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL") § 650 *et seq.*, and the spread of hours and overtime wage orders of the New York Commissioner of Labor (the "spread of hours order" and "overtime wage order" respectively codified at 12 N.Y.C.R.R. § 142-2.2, 2.4.).

10.    Defendants did not pay the Plaintiff his lawfully due overtime of one and a half times his regular rate of pay for all hours worked over 40 hours per week for the duration of his employment with the Defendants.

11.    In addition, Defendants made improper deductions from Mr. Mota's paycheck.

12.    Further, Defendants did not pay Oscar Mota commissions pursuant to an agreement with Defendants that expressly promised a yearly commission in an amount of one percent of all the profits derived from each of the Individual Lots he was assigned.

13.    Mr. Mota therefore brings this action *inter alia* to recover his overtime, any improperly deducted wages, one percent of the yearly profits for 2003-2007 for the Individual Lots in commissions, and statutory liquidated damages, interest, costs, compensatory damages, punitive damages and attorney's fees.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (interstate commerce). Supplemental jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. § 1367(a).

- 4 -

15.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of New York within this district. Defendant Corporations reside in this district and Plaintiff was employed by the Defendants in this district.

## THE PARTIES

### Plaintiff Oscar Mota

16.     The Plaintiff is an adult individual residing in New York County, New York.

17.     Mr. Mota was employed by Defendants from on or about May 31, 2003 through August 3, 2007.

### Defendants

18.     Upon information and belief, Defendant Imperial Parking Systems, Inc. (a/k/a & a/d/b/a/ Imperial Parking Systems Corp.) ("Imperial"), is a corporation organized and existing under the laws of the State of New York. Imperial operates parking lots and maintains its principal business office at 107 W 13th Street, New York, NY, 10011. Defendant William Learner is its chairman or Chief Executive Officer of Imperial. Imperial operates the Individual Lots.

19.     Upon information and belief, Defendant 525-535 Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 525-535 E. 86th Street, New York, NY 10028. Defendant William Learner is its chairman or Chief Executive Officer.

20.     Upon information and belief, Defendant 650 Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107

W 13th Street, New York, NY, 10011, and its principal place of business at 650 Park Avenue, New York, NY 10021. Defendant William Learner is its chairman or Chief Executive Officer.

21.    Upon information and belief, Defendant Central Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal place of business at 860 5th Ave., New York, NY 10021, and its agent for service of process listed as Management Corp., located at 371 7th Avenue, New York, NY 10001.

22.    Upon information and belief, Defendant 785 Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 2 East 60th Street, New York, NY 10022. Defendant William Learner is its chairman or Chief Executive Officer.

23.    Upon information and belief, Defendant East 97th Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 175 East 96th Street, New York, NY 10128. Defendant William Learner is its chairman or Chief Executive Officer.

24.    Upon information and belief, Defendant Central Harlem Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 130 Malcolm X Blvd., New York, NY 10026. Defendant William Learner is its chairman or Chief Executive Officer.

25.    Upon information and belief, Defendant 160 Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 160 East 65th Street, New York, NY 10021. Defendant William Learner is its chairman or Chief Executive Officer.

26.     Upon information and belief, Defendant East River Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 345 East 94th St., New York, NY 10128. Defendant William Learner is its chairman or Chief Executive Officer.

27.     Upon information and belief, Defendant Prestige Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 25 Sutton Place So., New York, NY 10022. Defendant William Learner is its chairman or Chief Executive Officer.

28.     Upon information and belief, Defendant West 145th Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 330 W. 145th St., New York, NY 10039. Defendant William Learner is its chairman or Chief Executive Officer.

29.     Upon information and belief, Defendant 444 Manhattan Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 444 Manhattan Ave., NY, NY 10026. Defendant William Learner is its chairman or Chief Executive Officer.

30.     Upon information and belief, Defendant 200 E. 70 Gar. Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 201 E. 69th St., New York, NY 10021. Defendant William Learner is its chairman or Chief Executive Officer.

31.     Upon information and belief, Defendant 1010 Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107

W 13th Street, New York, NY, 10011, and its principal place of business at 530 E. 72nd Street, New York, NY 10028. Defendant William Learner is its chairman or Chief Executive Officer.

32. Upon information and belief, Defendant 200 East Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 1081 3rd Ave., New York, NY 10021. Defendant William Learner is its chairman or Chief Executive Officer.

33. Upon information and belief, Defendant West 54th Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 141 W. 54th Street, New York, NY 10019. Defendant William Learner is its chairman or Chief Executive Officer.

34. Upon information and belief, Defendant 345 East Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 345 E. 80th Street, New York, NY 10021. Defendant William Learner is its chairman or Chief Executive Officer.

35. Upon information and belief, Defendant Lexington Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 1501 Lexington Ave., New York, NY 10029. Defendant William Learner is its chairman or Chief Executive Officer.

36. Upon information and belief, Defendant 100 Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 1831 Madison Ave., New York, NY 10035. Defendant William Learner is its chairman or Chief Executive Officer.

37.     Upon information and belief, Defendant 355 E. 72nd Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 355 East 72nd St., New York, NY 10021.  Defendant William Learner is its chairman or Chief Executive Officer.

38.     Upon information and belief, Defendant 165 East Parking. Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 165 E. 72nd / 184 E. 73rd St., New York, NY 10021.  Defendant William Learner is its chairman or Chief Executive Officer.

39.     Upon information and belief, Defendant 250 E. 63rd Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 250 East 63rd St., New York, NY 10021.  Defendant William Learner is its chairman or Chief Executive Officer.

40.     Upon information and belief, Defendant 182 E. 73rd Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 182 East 73rd Street, New York, NY 10021.  Defendant William Learner is its chairman or Chief Executive Officer.

41.     Upon information and belief, Defendant 118 Parking Corp. is a corporation organized and existing under the laws of the State of New York with its principal offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 1682 Park Ave., New York, NY 10035.  Defendant William Learner is its chairman or Chief Executive Officer.

42.     Upon information and belief, Defendant 220 East 63rd St. Garage Corp. is a corporation organized and existing under the laws of the State of New York with its principal

offices at 107 W 13th Street, New York, NY, 10011, and its principal place of business at 220 E. 63rd Street, New York, NY 10021. Defendant William Learner is its chairman or Chief Executive Officer.

43.     Upon information and belief, Defendant William Lerner resides at 55 Rearview Terrace, New York, NY 10022. Defendant William Lerner is an individual engaged in business in the City and County of New York.

44.     Defendant William Lerner, who is sued individually in his capacity as an owner, officer and/or agent of Imperial and the Individual Lots, possesses operational control over Imperial and the Individual Lots, possess an ownership interest in Imperial and the Individual Lots, controls significant functions of Imperial and the Individual Lots, determines the wages, hours, and duties and makes hiring/firing decisions of employees of Imperial and the Individual Lots.

45.     Defendant Jack Lerner, who is sued individually in his capacity as an owner, officer and/or agent of Imperial and the Individual Lots, also possesses operational control over Imperial and the Individual Lots, possess an ownership interest in Imperial and the Individual Lots, controls significant functions of Imperial and the Individual Lots, determines the wages, hours, and duties and makes hiring/firing decisions of employees of Imperial and the Individual Lots. Jack Learner's place of business is 107 W 13th Street, New York, NY, 10011.

46.     Upon information and belief, Defendant Robert Delouise works for Imperial, and also manages operations of the Individual Lots, and possesses sufficient control and authority over the Individual Lots and the employees of the various entities to be considered an employer or manager of the employees in Imperial and the Individual Lots, including Mr. Mota. Upon information and belief, Defendant Delouise operates as a day-to-day manager of operations for

- 10 -

the Defendants, and his place of business is 107 W 13th Street, New York, NY, 10011. Mr. Delouise resides at 2600 Netherland Ave., Riverdale, NY 10463.

## STATEMENT OF FACTS

47.     Mr. Mota began his employment with Defendants on or about May 31, 2003, and continued without interruption in employment through August 3, 2007.

48.     Mr. Mota worked in a position that Defendants gave the title "manager." However, Mr. Mota did not perform managerial duties.

49.     Rather, Defendants charged Mr. Mota with investigating, auditing, and reporting on conditions for approximately 23 of the parking lots maintained, operated, and/or owned by Defendants (referred to herein as the Individual Lots, and set forth above at paragraph 5).

50.     Mr. Mota's duties therefore included visiting his assigned garages (the Individual Lots), observing the physical condition of the Individual Lots, and then reporting his observations to the Defendants.

51.     Mr. Mota was also required to investigate the employees of the Individual Lots, and ensure that they were performing their duties, and report his findings on the employees back to the Defendants.

52.     Mr. Mota routinely would make oral and written reports to Defendants concerning matters such as unpaid parking tickets, burned out lights, broken pavement or other hazards, issues with the workers (such as employee theft), painting problems, the existence of cars without parking tickets, problems with record keeping, the need to move cars, and problems with the on-site computers.

53.     In essence, Mr. Mota served as a roving investigator of the conditions of the company's parking lots, and was required to report only what he observed with respect to

employees and the condition of the facilities, and whether or not the workers and the facilities were meeting company requirements.

54.     Mr. Mota was further expected to check that his assigned locations were open at the required times, and to report back if employees were not there when they were supposed to be. By doing so, Defendants wanted the Plaintiff to "scare" the other employees into complying with their work schedules.

55.     Mr. Mota, however, has no accounting degree, or other advanced degree, certification or licensure.

56.     Mr. Mota also had no employees subordinate to his management, nor did he have the authority to hire, fire, reprimand, or determine the conditions of employment of any other employees of Defendants. Further, Mr. Mota also had no authority to evaluate the work performance of any employee.

57.     Therefore, Mr. Mota's duties were not those of a manager, and required neither independent discretion nor decision-making authority.

58.     In addition to performing his required duties, Mr. Mota was called upon to go above and beyond his "auditor duties" and perform additional duties directly for Defendant William Lerner such as retrieving shirts from his home, taking checks to his house, getting him coffee, picking up sketches from architects, and even going to competitors' garages and secretly taking pictures of the competitors' rates to compare their prices.

### Mr. Mota's Hours Worked and Compensation

59.     Throughout his employment, the Mr. Mota worked on average at least 60 hours per week for Defendants, 5-7 days a week, and usually exceeded 60 hours per week.

60.    During his employment with the Defendants, Mr. Mota was paid entirely by check.

61.    From approximately May 31, 2003 until October 1, 2003, Mr. Mota was paid an hourly rate of $13.59.

62.    From approximately October 2003 until June 2004, Mr. Mota was paid a flat weekly amount of $800.00 per week.

63.    From approximately June 2004 until December 2004, Mr. Mota was paid a flat weekly amount of $825.00 per week.

64.    From approximately December 2004 until March 2005, Mr. Mota was paid a flat weekly amount of $875.00 per week.

65.    From approximately March 2005 until May 2005, Mr. Mota received a flat weekly amount of $890.00 per week.

66.    From approximately May 2005 until March 2006, Mr. Mota received a flat weekly amount of $1,000.00 per week.

67.    From approximately March 2006 until September 2006, Mr. Mota received a flat weekly amount of $1,015.00 per week.

68.    From approximately September 2006 until March 2007, the Plaintiff received a flat weekly amount of $1,065.00 per week.

69.    From approximately March 2007 until August 2007, the Plaintiff received a flat weekly amount of $1,082.20 per week.

70.    Defendants were fully aware that Mr. Mota was working well in excess of 40 hours a week, and over 10 hours a day.

71.     Defendants demanded that Mr. Mota execute a document in or about June of 2004 attempting to waive his rights under the FLSA and NYLL.

72.     Further, Defendants paid Mr. Mota his checks from several different corporate entities, including Imperial Parking Systems, Inc., Central Garage Corp., 160 Parking Corp., H&H Garage Corp., and 650 Park Avenue Corporation.

73.     Mr. Mota in fact worked not for one of the Individual Lots, but for Defendants as a unified operation, therefore his paychecks from some of the Individual Lots may have been attempts to obfuscate his hours worked per week, and distance Mr. Mota's employment from the central operations of Imperial and the Individual Defendants.

74.     Further, these checks do not properly account for Mr. Mota's hours worked (although there are anomalies, such as occasionally listing his working exactly 40 hours a week, or rarely, even an "overtime" entry). Indeed, the weekly compensation was paid uniformly at a "flat" weekly amount, as stated above, regardless of hours worked.

75.     Mr. Mota never received a weekly accounting of his actual hours worked from Defendants, although he was asked to conform to a general schedule, and observe the lots during hours of operations, requiring on average 60 hours or more of work per week.

76.     Therefore, Defendants conduct in failing to pay Mr. Mota, or keep track of his hours, despite his not being an exempt employee, was willful.

77.     Further, on occasion, Defendants would deduct certain amounts from Mr. Mota's wages for breakage, or other accounting issues.

78.     Such deductions in Mr. Mota's compensation were not authorized by law, nor were they authorized as part of any contract or agreement with Defendants.

- 14 -

*Defendants Promised Mr. Mota a Commission Payment of 1% of the Profits of Each Garage*

79.   On or about March 1, 2004, Mr. Mota received a letter certification from Defendant William Lerner that stated "This certifies that you will receive 1% commission of the profits made from all your assign[ed] [sic] garages at the end of the year. My proposition is to increase revenue in each garage. Please be guided accordingly."

80.   The letter was addressed to Mr. Mota, was placed upon Imperial Parking Systems letterhead, and was dated March 1, 2004.

81.   The letter was signed by William Lerner as President of Imperial Parking Systems.

82.   Mr. Mota performed his investigatory, auditing, and reporting duties to the upmost of his ability so as to increase revenue in each of his assigned garages.

83.   Mr. Mota performed these revenue increasing duties for each year of his employment following the March 1, 2004 letter, in reliance on the promise that he would receive a 1% commission of the profits made from all the garages at the end of each year.

84.   The parties implicitly understood the agreement to continue from year to year.

85.   Upon information and belief, the investigation, auditing and reporting Mr. Mota did in fact did increase profitability in each of the garages.

86.   Further, the 1% commission was integral in inducing Mr. Mota to remain in employment in a position where he was required to travel extensively around the city every day for long hours, and was seen negatively by other employees (as he would "rat them out" to management if they were not doing their work).

87.    In addition, Mr. Mota was in a position of trust, where he was asked to be the eyes and ears of management, and the additional compensation was incentive that tied success of the lots with his efforts.

88.    Despite his performance, Mr. Mota was not given his 1% commission payment for each of the garages' revenue.

89.    Mr. Learner, or the other defendants, would offer an excuse, such as economic factors, for not paying Mr. Mota the yearly commission payments.

90.    When Mr. Mota would request payment, Defendants would state something to the effect of it being difficult to pay now, or that "you are killing us" in light of the bills Defendants had to pay, but that payment would eventually come.

91.    However, Defendants continued to affirmatively lead Mr. Mota to the belief that his 1% commissions were forthcoming, and that he would be paid eventually.

92.    Therefore, Mr. Mota continued working in 2004, 2005, 2006 and through August of 2007, relying upon the promise of Defendant William Lerner that he would be paid, in addition to his base wages, an additional 1% commission based upon the profit of each garage in each of those years.

93.    However, Mr. Mota never received any commissions for any of the garages for any year in which he worked.

94.    Upon information and belief, Defendants maintained records, or such records are available (such as taxes) upon which a sum certain may be calculated for each garage's profit per each year.

95.    Mr. Mota relied upon the promise of the commissions to his detriment, and performed services that directly increased the profitability of the Individual Lots.

96.     Mr. Mota's reliance on Defendants' promise to pay the commissions was reasonable in light of the continued promises to pay, and the written document he received in 2004.

97.     Defendants, knowing the promises they made to Mr. Mota, knew that he was performing in order to receive the commissions, and willingly accepted his services in 2004, 2005, 2006, and 2007.

98.     Alternatively, Defendants did not intend to pay Mr. Mota any commission, but took actions so as to induce him to continue to work long hours at approximately 23 different locations, so as to receive the benefits of his work without ever possessing the intent to pay him.

99.     If so, such actions were taken with requisite scienter, so as to deprive Mr. Mota of his commissions, and hide such intent from him while continuing to accept his services.

100.    These intentional actions caused Mr. Mota to rely upon the false promises by Defendants for the 1% in commissions to his detriment.

101.    Mr. Mota's reliance was reasonable under the circumstances.

102.    Further, even if Defendants did not intentionally induce Mr. Mota to perform in return for commissions of 1%, such promises were alternatively made negligently or recklessly.

103.    Defendants owed Mr. Mota a duty to disclose the inability to pay commissions, or that for some reason the commissions would not be paid.

104.    Defendants breached that duty by failed to disclose the potential for non-payment, leading to Mr. Mota performing services for which he was not compensated.

105.    Mr. Mota did not work for any other entity during his employment with Defendants from 2003-2007, and as a result he forewent other opportunities based upon the promises and representations of Defendants.

*Defendant Corporations Constitute Joint Employers*

106.    Defendants Imperial Parking Systems Inc. (a/k/a Imperial Parking Systems Corp.), 525-535 Garage Corp., 650 Parking Corp., Central Garage Corp., 785 Garage Corp., East 97th Parking Corp., Central Harlem Garage Corp., 160 Parking Corp., East River Parking Corp., Prestige Garage Corp., West 145th Garage Corp., 444 Manhattan Parking Corp., 200 E. 70 Gar. Corp., 1010 Parking Corp., 200 East Parking Corp., West 54th Parking Corp., 345 East Garage Corp., Lexington Garage Corp., 100 Parking Corp., 355 E. 72nd Garage Corp., 165 East Parking Corp., 250 E. 63rd Garage Corp., 182 E. 73rd Garage Corp., 118 Parking Corp., 220 East 63rd St. Garage Corp. are shell corporations controlled by the same owner, or owner group, and operate as a unified operation.

107.    The Defendants are associated and joint employers, utilizing the Plaintiff, as well as their other employees, in a fungible and interchangeable manner as employees amongst the parking lots owned and operated by Defendants.

108.    Upon information and belief, Defendants William Lerner and Jack Lerner are the owners and/or executive directors of Imperial Parking Systems.

109.    At all relevant times, Defendants William Lerner, Jack Lerner and/or Robert Delouise (as general day-to-day operations manager), directly supervised and jointly employed the Plaintiff.

110.    The gross annual volume of sales made, or business done by the Defendant Corporations (including, if necessary, all Defendants as Joint Employers), for each year in existence, was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

- 18 -

111.   At all relevant times, Defendants were the Plaintiff's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire the Plaintiff, control his terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

*Defendants' General Compensation and Employment Practices*

112.   At all times relevant to this action, the Plaintiff worked as an auditor or roving investigator in parking lots owned and/or operated by Defendants, reporting to the Defendants the conditions of the parking lots.

113.   The Individual Lots service cars from every state in the country, and located throughout the city.

114.   As such, the Plaintiff's work was involved with or related to the movement of goods for interstate commerce.

115.   Further, Plaintiff, and Defendants generally, routinely handled cars that were brought to public parking garages in New York City; such cars surely epitomize "goods or materials that have been moved in or produced for interstate commerce."

116.   Defendants regularly required the Plaintiff to work in excess of forty (40) hours per week and more than ten (10) hours a day without paying him overtime wages, or spread of hour compensation.

117.   As detailed below, Defendants' pay practices resulted in the Plaintiff not receiving payment for all of his hours worked, or appropriate overtime or spread of hours pay.

118.   Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York State Labor Law by failing to maintain proper and accurate timesheets or payroll records.

119.   Furthermore, the Defendants self-servingly classified the Plaintiff as a "manager", even though the Plaintiff did not at any time throughout his employment with the Defendants perform the duties of a manager, and his main duty was to only provide reports regarding the conditions of the parking lots to the Defendants.

120.   After October 2003, Defendants paid the Plaintiff a flat weekly salary regardless of the number of hours worked in a week, or number of hours worked over 40 in a week.

121.   Mr. Mota's paycheck reflected only that he received the same flat amount each week, without any accounting of the actual hours worked.

122.   Upon information and belief, this was done so to disguise the actual number of hours the Plaintiff worked, and to avoid paying the Plaintiff properly for (1) his full hours worked, (2) for overtime due, and (3) for spread of hours pay.

123.   Since the paychecks were not accurate, Defendants failed to provide the Plaintiff with an accurate indication as to the rate of pay, daily hours worked, or total hours worked each week for the full amount of weekly hours.

124.   Due to the Defendants' incorrect classification of the Plaintiff as a manager, Defendants did not pay the Plaintiff for his full time worked.

125.   Defendants did not pay the Plaintiff additional overtime pay beyond the occasional few hours placed on his paychecks for the time period in the beginning of his employment with the Defendants from approximately May 31, 2003 until October 1, 2003.

126.   From approximately October 2003 until August 2007, Defendants instead paid the Plaintiff a flat weekly salary, with no accounting for all the hours the Plaintiff worked.

127. As such, the Plaintiff was not properly paid for his work or for overtime. This practice also evaded the spread of hours pay as it ignored any accounting for all of the hours the Plaintiff worked.

128. In addition, the Plaintiff could not take a meal break due to the fact that he had to rotate visits to the twenty-three parking lots that he was assigned to audit, and as a result, was required to work his entire 12-hour shifts without receiving a meal break.

129. Defendants denied the Plaintiff time off for meals and breaks in violation of New York State Labor Law § 162.2. Plaintiffs received neither a thirty-minute break for lunch, nor an additional 20 minute break between 5 P.M. and 7 P.M. for those employed on a shift starting before 11 A.M. and continuing after 7 P.M.

130. At no time during their employment did the Plaintiff ever observe on Defendants' premises any posted notice regarding employees' rights under the Fair Labor Standards Act, New York State Labor Law and Regulations or the procedures for filing a charge for violations of these state and federal labor laws.

131. Additionally, from time to time, Defendants made illegal deductions from Mr. Mota's wages to account for breakage or other charges they improperly took against his wages.

132. Further, Mr. Mota's re-classification in October, 2003 as a manager, and Defendants' inaccurate portrayal of his hours worked, amongst other actions, constitute a willful disregard for the federal and New York State wage and hour laws.

## FIRST CAUSE OF ACTION
## OVERTIME WAGE ORDER UNDER THE FLSA

133. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

134. At all times relevant to this action, Plaintiff was engaged in interstate commerce in an industry or activity affecting commerce.

135. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

136. Defendants had the power to hire and fire Plaintiff, control the terms and conditions of his employment, and determine the rate and method of any compensation in exchange for his employment.

137. Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r-s).

138. Defendants willfully failed to pay Plaintiff pursuant to the overtime wage order at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek, in violation of 29 U.S.C. §§ 207(a)(1) and 255(a).

139. Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Overtime Wage Order under the NYSLL

140. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

141. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

142. Defendants had the power to hire and fire Plaintiff, control the terms and conditions of his employment, and determine the rate and method of any compensation in exchange for his employment.

143.    Defendants willfully failed to pay Plaintiff overtime at the rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek, in violation of NYLL § 190 *et seq.* and regulations of the New York State Department of Labor.

144.    Defendants' failure to pay Plaintiff overtime was willful within the meaning of NYLL § 663.

145.    Plaintiff has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Spread of Hours Wage Order

146.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

147.    Defendants failed to pay the Plaintiff one additional hour's pay at the minimum wage rate for each day the Plaintiff worked more than ten hours in violation of the Spread of Hours Wage Order.

148.    Defendants' failure to pay the Plaintiff an additional hour's pay for each day the Plaintiff worked in excess of ten hours was willful within the meaning of NYLL § 663.

149.    Plaintiff has been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### IMPROPER WAGE DEDUCTION UNDER THE FLSA

150.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Plaintiff was engaged in interstate commerce in an industry or activity affecting commerce.

152.   At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

153.   Defendants had the power to hire and fire Plaintiff, control the terms and conditions of his employment, and determine the rate and method of any compensation in exchange for his employment.

154.   Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r-s).

155.   Defendants willfully failed to pay Plaintiff pursuant to the FLSA, as they improperly deducted from his wages due.

156.   Such deduction constituted a violation of the FLSA, as once the fixed minimum portion of Plaintiff's base wage rate was determined, and any reduction below that set amount would violate the FLSA, either as a direct failure to pay wages, or alternatively under a "salary-basis test" (e.g. 29 C.F.R. § 541.118(a)).

157.   Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Improper Wage Deduction Under the NYLL)

158.   Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

159.   At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

160.   Defendants had the power to hire and fire Plaintiff, control the terms and conditions of his employment, and determine the rate and method of any compensation in exchange for his employment.

161.    Defendants willfully failed to pay Plaintiff his full wages due, as Defendants improperly deducted and/or garnished his wages in violation of Labor Law § 193(1), in that "[n]o employer shall make any deduction from the wages of an employee" except in certain situations which did not apply.

162.    Defendants' failure to pay Plaintiff overtime was willful within the meaning of NYLL § 663.

163.    Plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Breach of Contract for Commissions

164.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

165.    Defendants entered into a written agreement with the Plaintiff dated March 1, 2004, where the Defendants promised to pay the Plaintiff a commission in a sum equal to one percent of the profits earned from those garages he was assigned by the Defendants to work.

166.    The commission was to be paid on or about the end of the year.

167.    Plaintiff performed under the contract, and therefore earned the promised commissions for continuing his employment for the Defendants from 2004 through August 3, 2007.

168.    Defendants breached the agreement by failing to pay the Plaintiff any commission amounts earned for the years 2004 through 2007.

169.    As a result of the Defendants' breach, the Plaintiff has suffered damages in amounts to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Contract for Commissions

170.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

171.    Defendants entered into an agreement with the Plaintiff dated March 1, 2004, where the Defendants promised to pay the Plaintiff a commission in a sum equal to one percent of the profits earned from those garages he was assigned by the Defendants to work.

172.    Plaintiff earned the promised commissions for continuing his employment for the Defendants throughout May 31, 2003 through August 3, 2007.

173.    At all times relevant, when the Plaintiff was performing his work duties, the Defendants knew that the Plaintiff was performing his duties for the benefit of the Defendants and that the Plaintiff had an expectation to receive the stated compensation for his work.

174.    Defendants accepted and received the benefits of the work, labor, and services performed by the Plaintiff.

175.    Defendants breached this implied contract by failing to pay the Plaintiff all the commissions for years that the Plaintiff was employed by the Defendants, which were 2003 up and including 2007.

176.    Further, Defendants' conduct breached the implied covenant of good faith and fair dealing present in every contract in New York, by eschewing him of the benefits of his contract.

177.    As a result of the Defendants' breach, the Plaintiff has suffered damages in amounts to be determined at trial.

## EIGHTH CAUSE OF ACTION
### Quantum Meruit

178.   Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

179.   Based upon Defendants' promises to pay the Plaintiff a commission of one percent of the amount of profits generated for each year from the parking lots that the Plaintiff was assigned to, the Plaintiff understood and expected that he would be paid, in addition to his wages, compensation in the form set forth above.

180.   Based upon defendants' promises to Mr. Mota an annual bonus under Defendants' March 1, 2004 1% commission letter, Mr. Mota understood and expected that he would be paid, in addition to his base salary, compensation in the form set forth above.

181.   Starting in March of 2004, and throughout the remainder of 2004, the years 2005, 2006 and 2007, Mr. Mota worked for defendants in good faith and with a reasonable expectation of being paid the 1% commission payment.

182.   Defendants received the benefit of the services performed by the Plaintiff, and have been unjustly enriched at the Plaintiff's expense by failing to pay to him for the value of his work.

183.   Defendants' retention of the benefits Mr. Mota conferred on them constitutes unjust enrichment of defendants at the expense of Mr. Mota.

184.   Defendants are liable to Mr. Mota in an amounts to be determined at trial.

## NINTH CAUSE OF ACTION
### Unjust Enrichment/ Detrimental Reliance/ Promissory Estoppel

185.   Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

- 27 -

186.    The statements to Mr. Mota, both in the March 1, 2004 letter, and by Defendants' inducing him to continue performing in order to receive his 1% commission, as described above, constituted clear and definite promises.

187.    As a result of Mr. Mota's belief that a commission agreement had been made, he performed additional services, and forwent other opportunities, that conferred a benefit upon the Defendants, therefore Defendants were enriched by Mr. Mota's services and continued performance.

188.    Should Mr. Mota not be compensated, the Defendants will obtain that benefit without adequately compensating the plaintiff therefore, and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

189.    Therefore, Mr. Mota seeks the fair value of his commissions in quantum meruit.

190.    Further, Defendants could reasonably have expected that Mr. Mota would act, or refrain from acting, in reliance upon Defendants' promises.

191.    Mr. Mota reasonably relied on Defendants' promises to his detriment by not seeking other employment opportunities, and by continuing to work long and hard hours at multiple garage locations.

192.    Defendants breached their promises by terminating Plaintiff and failing to provide Plaintiff the compensation and benefits due upon his termination.

193.    As a direct and proximate result of Defendant's failure to perform its promises, Plaintiff has been damaged.

**TENTH CAUSE OF ACTION**
**(Violation of the New York Labor Law §§ 191, 193, 198**
**For Earned Commissions Under the March 1, 2004 letter)**

194.    Plaintiff repeats and realleges all paragraphs above as though fully set forth
herein.

195.    Plaintiff was an "employee" of Defendants under §§ 190(2) of the New York
Labor Law.

196.    Defendants were Plaintiff's "employer" under § 190(3) of the New York Labor
Law.

197.    Defendants' willful failure to pay any compensation (as called for under the
commission letter dated March 1, 2004) constitutes an unlawful withholding of wages in
violation of § 190(3) of the New York Labor law.

198.    Such commission payments, in the amount of the sum of 1% of the profit from
each of the Individual Lots assigned to Plaintiff in 2004, 2005, 2006 and 2007, were rendered
sums certain at the end of the year, and can be calculating by determining the profits generated at
each of the Individual Lots.

199.    Mr. Mota earned these commissions, and in fact his work directly contributed to
the profits derived in each of the Individual Lots assigned to him.

200.    Mr. Mota therefore seeks the earned commission payments for each year,
including the entirety of 2004, 2005, 2006 and 2007. In the alternative, Mr. Mota seeks a pro-
rata calculation of the commission payments due for the years 2004 and 2007 (adjusted for the
amount of time worked in each year), and the entirety of the commission payments due for years
2005 and 2006.

201.    Defendants' willful failure to pay Mr. Mota (as called for under the May 1, 2004
commission letter agreement) constitutes an unlawful withholding of wages in violation of § 191
of the New York Labor law.

202.    Upon information and belief, Defendant's violation of §§ 191, 193 of the New

York Labor Law was willful, entitling Plaintiff to liquidated damages.

203.    Based upon the foregoing, Defendants are liable to Mr. Mota for unpaid

compensation in an amount to be determined at trial, plus an additional 25% of the withheld

wages, interest, costs, and attorney's fees under § 198 of the New York Labor Law.

## ELEVENTH CAUSE OF ACTION
### (Fraudulent Inducement to Contract)

204.    Plaintiff repeats and realleges all paragraphs above as though fully set forth

herein.

205.    Defendant William Lerner, directly, and for Defendants, as an agent,

representative, executive, or controlling person of Defendants, intentionally, and knowingly,

induced plaintiff to agree to contract with Defendants, with terms that defendant never intended

to honor.

206.    Defendants knowingly and willfully misrepresented and/or omitted material facts

for the purpose of defrauding and inducing the Plaintiff to enter into the agreement, and/or

continue working under the commission agreement, here that the commissions would be paid.

207.    The Defendants knew such misrepresentations or omission of material facts to be

false, or that such omission would render the substance false, and made such misrepresentations

or omissions for the purposes of inducing Mr. Mota to rely upon them.

208.    These misrepresentations or omission of material facts regarded a fraud separate

and apart from any contractual relationship, and were designed to induce Mr. Mota to continue to

believe commissions were available and forthcoming.

209.    Plaintiff relied on Defendants' misrepresentations or omission of material facts, to his detriment and injury.

210.    Defendants conduct subjects them to punitive damages, as their conduct was morally culpable conduct and a gross, wanton, or willful fraud designed to evade the labor laws, and deprive Plaintiff of incentive compensation while inducing him to continue to labor under the belief that his compensation was forthcoming.

211.    As a direct result of plaintiff's reliance on Defendants' fraudulent representations, plaintiff suffered harm.

212.    Plaintiff therefore seeks actual and compensatory damages, and punitive damages not less than $500,000, and interest, in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

213.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

214.    Defendants, through William Learner, and its employees, owed Mr. Mota a duty of care in properly representing employment terms and conditions, and in conducting itself properly in the commission allocation process.

215.    Further, Defendants owed Mr. Mota a special duty in these circumstances to inform him that there is a there was likelihood that commission payments were not going to be made to Mr. Mota.

216.    Such duty was independent of any contract that may have in of itself been violated.

217.   By failing to disclose the fact that commission payments would not be made, or were unlikely to be made, the Defendants breached their duty to Mr. Mota, as the information he relied upon was false.

218.   Mr. Mota reasonably relied upon the information that the commission payments would be made.

219.   For example, Defendants controlled the payout of the commissions, and were in unique and sole control of the financial documents and information for the Individual Lots, and therefore, were in a special position of confidence and trust with Mr. Mota such that reliance on the negligent misrepresentation is justified.

220.   Defendants' conduct evinces a high degree of moral turpitude and wanton dishonesty, especially when many of their actions were taken to avoid or criminally violate the labor laws, and deprive Plaintiff of his commissions.  Such conduct subjects Defendants to an award of punitive damages.

221.   As a proximate cause of this failure, Mr. Mota suffered economic and other harm, (including but not limited to an amount equal to 1% of the profit of the Individual Lots), plus punitive damages not less than $500,000, and interest, in an amount to be determined at trial,.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants:

A.   Declaring that Defendants have violated the overtime wage orders of, and associated rules and regulations under, the FLSA as to the Plaintiff;

B.   Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to the Plaintiff's

compensation, hours, wages, and any deductions or credits taken against wages;

C.      Declaring that the Defendants operated as joint employers or as a single employer of the Plaintiff;

D.      Declaring that Defendants' violation of the provisions of the FLSA were willful as to the Plaintiff;

E.      Awarding Plaintiff damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

F.      Awarding Plaintiff liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

G.      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to the Plaintiff;

H.      Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to the Plaintiff;

I.      Declaring that the Defendants have violated the recordkeeping requirements of the NYLL with respect to the Plaintiff's compensation, hours, wages; and any deductions or credits taken against wages;

J.      Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to the Plaintiff;

K.      Awarding the Plaintiff damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

- 33 -

L.      Awarding the Plaintiff liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663;

M.      Declaring that the Plaintiff is entitled to an accounting of the profits of the Individual Lots for the years 2003 through 2007; and awarding such an accounting;

N.      On the action for breach of contract, awarding the Plaintiff compensatory damages in an amount to be determined at trial, plus costs and interest;

O.      On the action for breach of implied contract, awarding the Plaintiff compensatory damages in an amount to be determined at trial, plus costs and interest;

P.      On the action for quantum meruit (eighth cause of action), awarding the Plaintiff compensatory damages for the fair value of his services, plus costs and interest;

Q.      On the action for unjust enrichment/ detrimental reliance/ promissory estoppel, (ninth cause of action) awarding the Plaintiff compensatory damages in an amount to be determined at trial, plus costs and interest;

R.      On the action for earned commissions under the NYLL (tenth cause of action), declaring Defendants in violation of §§ 191, 193 of the New York Labor Law, that such violation was willful, and awarding Mr. Mota his unpaid commission compensation in an amount to be determined at trial, plus an additional 25% of the withheld wages, interest, costs, and attorney's fees under § 198 of the New York Labor Law;

S.      On the action for fraudulent inducement (eleventh cause of action), awarding Plaintiff compensatory damages, and punitive damages in an amount not less than $500,000 dollars, and interest in an amount to be determined at trial;

T.      On the action for negligent misrepresentation (twelfth cause of action), awarding

- 34 -

Plaintiff damages suffered for economic, compensatory, and other reasonably foreseeable harm (including but not limited to an amount equal to 1% of the profit of the Individual Lots), and punitive damages not less than $500,000, and interest, in an amount to be determined at trial;

U.   Awarding, where appropriate, the Plaintiff the expenses incurred in this action, including costs and attorney's fees;

V.   Allowing the aforementioned causes of action to exist in the alternative until such time as an election of remedies is appropriate, and

W.   Awarding the Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 5, 2008

MICHAEL FAILLACE & ASSOCIATES, P.C.

By
        Michael A. Faillace, Esq. [MF-8436]
        110 East 59th Street, 32nd Floor
        New York, New York 10022
        (212) 317-1200
        *Attorneys for Plaintiffs*

- 35 -